# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 24-2663

LINCOLN NATIONAL LIFE INSURANCE CO

v.

RETIREMENT VALUE LLC,
Appellant

_____

On Appeal from the U.S. District Court, D.N.J.
Judge Robert Kirsch, No. 3:21-cv-20438

Before: RESTREPO, MCKEE, AND AMBRO, *Circuit Judges*
Submitted: Nov. 14, 2025; Filed: June 10, 2026

_____

NONPRECEDENTIAL OPINION[*]
_____

RESTREPO, *Circuit Judge.*

Appellant, Retirement Value, LLC, sought to collect payment on life insurance

policies issued by Appellee, Lincoln National Life Insurance Company ("Lincoln").

Lincoln, believing the policies to be void ab initio, filed a lawsuit and was eventually

granted summary judgment. Retirement Value now appeals that judgment and the

dismissal of its counterclaims. For the reasons that follow, we will affirm the District

Court's order.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

## I.

By way of background, stranger-originated life insurance policies (STOLIs) are life insurance policies "procured and financed by investors—strangers—who have no insurable interest in the life of the insured yet, from the outset, are the ultimate intended beneficiaries of the policy." *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839, 850 (N.J. 2019). STOLIs are void ab initio under New Jersey law. *Id.* at 857 ("When an insurance policy violates public policy, it is as though the policy never came into existence."); N.J. Stat. Ann. § 17B: 24-1.1(b).

This case involves STOLI policies procured to insure the life of Haya Majerovic. In 2007, her son Moshe Majerovic entered into an agreement with investors whereby he would secure an insurance policy on his mother's life and the investors would pay the premiums on the policy until it either matured or was sold. The agreement was that Moshe Majerovic would get 10% of the policy's value at the time of sale or maturity, minus the amount paid for the premiums, and the remaining 90% would be paid to the investors. The investors in Mrs. Majerovic's life insurance policy were two organizations: Congregation Sons of Ateres Joshua and Congregation Beis Shloma.

The agreement was memorialized in a document titled the Haya Majerovic Family Trust Agreement, which was dated February 1, 2007. The situs of the Haya Majerovic Family Trust (the "Trust") was Lakewood, New Jersey. On or about March 8, 2007, Jefferson Pilot Life Insurance Company ("Jefferson Pilot"), a predecessor entity to Lincoln, received an initial application for an $8 million insurance policy on Mrs. Majerovic's life. The application, signed in Lakewood, New Jersey, listed the Trust as

2

the owner and beneficiary of the policy. A financial supplement to the application, also signed in Lakewood, New Jersey, falsely represented that Mrs. Majerovic had a net worth of $13 million. While the application was pending, an amendment was submitted requesting that the policy be split into two policies: a $5 million policy with the benefit going to the Congregation Beis Shloma, and a $3 million policy with the benefit going to the Congregation Sons of Ateres Joshua. Jefferson Pilot/Lincoln granted the request and issued the two policies for delivery to the Trust at its Lakewood, New Jersey address. The Majerovics never paid any of the premiums for the policies.

In 2010, the Trust sold the policies to James Settlement Services ("JSS"). The proceeds of the sale were paid to the Trust at the New Jersey address, and the money was distributed to the Trust's investors. The Majerovics received nothing. JSS then sold the policies to Retirement Value, which continued to pay the premiums on the policies. In November 2019, Mrs. Majerovic passed away, and Retirement Value submitted a claim to Lincoln requesting payment of the death benefits.

On December 9, 2021, Lincoln filed a lawsuit in the District Court seeking a declaratory judgment that the policies were void ab initio because they lacked an insurable interest when issued and were illegal human life wagers. Retirement Value answered, pleading affirmative defenses as well as counterclaims for breach of contract, fraud, negligent misrepresentation, bad faith, promissory estoppel, and alleged violations of Texas's Deceptive Trade Practices Act. Retirement Value also asserted a counterclaim to obtain a refund of the premiums it paid if the policies were deemed void ab initio.

3

On May 31, 2022, Lincoln moved to strike Retirement Value's affirmative defenses and dismiss its counterclaims. On December 9, 2022, District Judge Michael A. Shipp partially granted Lincoln's motion, striking Retirement Value's defenses except for unjust enrichment and incontestability, and dismissing its counterclaims except for breach of contract, bad faith, and premium recoupment. In so doing, Judge Shipp applied New Jersey law. On January 13, 2023, Retirement Value moved for reconsideration of the order, arguing that Judge Shipp's decision to apply New Jersey law was premature given new evidence that one of the trustees had lied to Lincoln about signing documents in New Jersey. The case was reassigned to District Judge Robert A. Kirsch, who denied the motion for reconsideration. Judge Kirsch ruled that the choice-of-law decision was not premature, and the new evidence did not alter the court's ruling.

On September 18, 2023, the parties cross-moved for summary judgment. Lincoln sought declaratory judgment on the grounds that the policies were void ab initio under New Jersey law because the policies' owners lacked an insurable interest in the life of the insured. Retirement Value again argued that New Jersey law should not apply, this time under the theory that the two policies constituted a group policy. Because the alleged group policy insured the life of New York resident Ms. Majerovic, Retirement Value claimed that New York law should apply.

On August 20, 2024, Judge Kirsch rejected Retirement Value's group policy argument, finding that the policies "operate, for all intents and purposes, as insurance policies." A25. Judge Kirsch found Judge Shipp's decision that New Jersey law applies to be "legally correct" because New Jersey "has the most significant relationship to the

4

Policies." A28. Applying New Jersey law, Judge Kirsch found that the insurance policies were STOLIs and therefore void ab initio for lack of insurable interest. He therefore granted Lincoln's motion for summary judgment, and denied Retirement Values' premium refund claim in full, finding *inter alia*, that the record refuted any claim that "Retirement [Value] was an innocent purchaser with no knowledge as to the STOLI arrangement." A47.

Retirement Value appeals the order granting judgment in favor of Lincoln, raising arguments similar to those raised before the District Court: that the two life insurance policies constitute a group policy that should be litigated under New York law, and the District Court erred by imposing New Jersey's insurable interest requirement on the policies because such a requirement does not apply to group policies. We will affirm the District Court.

## II.[1]

### A. New Jersey Law Governs

Retirement Value argues that New York law should govern this dispute because the Majerovic policies were certificates to a group policy rather than individual insurance policies. It claims that a New York statute provides that certificates issued to a group policy insuring a New York resident, which Ms. Majerovic was, are deemed to be delivered in New York and therefore must comply with New York insurance law. N.Y.

---

[1] The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Ins. Law § 3201(b)(1).  We disagree that this statute, even if applicable to the Majerovic policies, mandates the application of New York law.[2]

A federal court with diversity jurisdiction must apply the choice of law principles of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97 (1941). As this lawsuit was filed in New Jersey, we apply New Jersey's choice of law rules to determine which state's substantive law applies.  Where, as here, a claim alleges breach of an insurance policy, "the law of the place of the contract ordinarily governs the choice of law."  *State Farm Mut. Auto. Ins. Co. v. Est. of Simmons*, 417 A.2d 488, 492 (N.J. 1980).  The place of contract is where "the contract was negotiated, executed and performed."  *NL Indus., Inc. v. Com. Union Ins. Co.*, 65 F.3d 314, 325 (3d Cir. 1995). Once the place of contract has been established, courts look to see if another state has a more significant relationship to the coverage action.  *Id.*  Such a relationship is determined by examining the factors in Restatement (Second) of Conflicts § 188(2), which includes, *inter alia*, "the location of the subject matter of the contract" and "the domicile, residence, nationality, place of incorporation, and place of business of the parties."  *Id.*

---

[2] Alternatively, Retirement Value argues that if New York law does not apply, the Court should apply Rhode Island law because provisions in the policies state that the contracts are "'subject to the laws of the Governing Jurisdiction,' which [was] Rhode Island." Brief for Appellant 24 (quoting A216).  This provision is not an unambiguous choice-of-law provision and, even assuming it was, New Jersey law gives courts the authority to refuse to apply the chosen state's law if it has no substantial relationship to the parties. *Instructional Sys. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992).  Here, Retirement Value does not contend that the policies had any relationship with Rhode Island.

Assuming arguendo that the policies could be deemed certificates to a group policy, it does not follow that New York law applies. We agree with the District Court that N.Y. Ins. Law § 3201(b)(1)'s mandate that policies delivered in New York must comply with New York's insurance code does not mean that New York law must apply to any subsequent litigation. The District Court correctly stated that where group policies are delivered "should simply be one factor in the Court's choice of law analysis." A28. Given the facts before us, this factor does not result in New York law governing this dispute.

Here, New Jersey was plainly the place of contracting. The policies were applied for by a New Jersey-based trust, the application was signed in New Jersey, the policies were issued for delivery to the Trust at its New Jersey address, and the Trust received the policies in New Jersey. Moreover, the application's cover letter stated that the application "has been signed in NJ because it will be owned by a NJ trust." A12. The application also included an "Out-of-State Sale Verification Form," which identified New Jersey as the "State of Residence of Owner" and provided that the policy was "principally negotiated, issued and delivered" in New Jersey. *Id.* In looking to whether New York had a more significant relationship to the coverage action, we conclude that only Ms. Majerovic's place of residence favored New York law. This relationship is diminished by the fact that the Trust was the applicant and owner of the policies while Ms. Majerovic was merely a pawn used by the investors to implement their money-making scheme. We will therefore affirm the District Court's decision that New Jersey law should apply.

**B. Under New Jersey law, the Grant of Summary Judgment was Proper**

Next, we address whether summary judgment was properly awarded to Lincoln under New Jersey law. Retirement Value contends that the District Court applied the law incorrectly because New Jersey's laws governing group life insurance policies "say nothing about insurable interest." Brief for Appellant, 38 (emphasis omitted). Again assuming arguendo that New Jersey's group life insurance law applies to the policies, this contention misses the mark. New Jersey law deems STOLI policies, regardless of whether they are individual or group insurance policies, to be violative of public policy and therefore void ab initio. *See* N.J. Stat. Ann. § 17B:24-1.1(b); *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839 (N.J. 2019). We will therefore affirm the District Court's grant of summary judgment for Lincoln.

We exercise plenary review over the grant of summary judgment. *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020), *amended*, 979 F.3d 192 (3d Cir. 2020). Summary judgment is appropriate when the record shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "For purposes of summary judgment, . . . we must view the evidence in the light most favorable to the non-moving party." *Mellott v. Heemer*, 161 F.3d 117, 120 n.2 (3d Cir. 1998). Because this action is based on diversity jurisdiction, we apply state substantive law when exercising review. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000).

We agree with the District Court that the policies were "undoubtedly" STOLI policies, A39–40, and note that Retirement Value did not meaningfully challenge that

conclusion on appeal. The investors were strangers to the insured, and the Majerovics never paid any of the premiums for the policies. The investors were entitled to 90% of the policies' death benefits, and when the policies were sold, the Majerovics did not receive the proceeds they were promised. The investors had no insurable interest in the life of the insured but yet were the intended beneficiaries of her life insurance policies. Because such policies are deemed to violate public policy, "it is as though [they] never came into existence." *Sun Life*, 208 A.3d at 187 (citing *D'Agostino v. Maldonado*, 78 A.3d 527, 543 n.4 (N.J. 2013) ("A void contract is a contract that is of no legal effect, so that there is really no contract in existence at all." (citation modified))).

Retirement Value's contention that these policies, which are not supported by an insurable interest, would become valid if found to be part of a group policy is unpersuasive. Following the *Sun Life* decision, the New Jersey legislature enacted amendments to its Viatical Settlement's Act that state "[a] contract, agreement, arrangement, or transaction, including, but not limited to, a financing agreement or any other arrangement or understanding entered into . . . for the furtherance or aid of a stranger-originated life insurance policy . . . shall be void and unenforceable at the outset." N.J. Stat. Ann. § 17B:30B-18(b).[3] Given that the policies were purchased through a financing agreement, namely the Trust, which was intended to benefit third-party investors who had no insurable interest in Ms. Majerovic's life, they were instantly

---

[3] The next paragraph of the statute specifically addresses trusts, stating that "[a] trust that is created to give the appearance of an insurable interest and that is used to initiate or procure policies for investors shall be in violation of the insurable interest laws of this State and the prohibition against wagering on life." N.J. Stat. Ann. § 17B:30B-18(c).

unenforceable under section 17B:30B-18(b). There is nothing in the statute's plain language that excludes group policy insurance certificates from its purview. Instead, the Act defines "policy" as either "an individual or group policy, group certificate, contract or arrangement of life insurance." N.J. Stat. Ann. § 17B:30B-2; *see also* S. Commerce Comm. Statement to Assemb. No. 1263, 219th Leg., 1st Sess., at 2 (N.J. 2020) (Section 17B:30B-1 et seq. "is intended to codify [the] holding" of *Sun Life*, which "reaffirmed the long-standing tenet" that life insurance policies procured to benefit those "without an insurable interest in the life of the insured" are "void at the outset"); *Sun Life,* 208 A.3d at 845 (noting that "*all* New Jersey insurance policies must be based on an insurable interest" (emphasis added)). Because the STOLI policies never existed under New Jersey law, Lincoln was properly awarded declaratory judgment on this issue.

Finally, we conclude that Retirement Value waived its claim that it was entitled to a refund of the premiums paid toward the policies. Retirement Value failed to respond to Lincoln's arguments addressing its premium recoupment counterclaim below and thus failed to preserve the matter for appeal. We agree with the District Court that Retirement Value's "passing references" to its recoupment claim, made without reference to any legal authority, are not entitled to appellate review. A46; *see also Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) ("It is well established that arguments not raised before the District Court are waived on appeal." (citation modified)); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived."). We will therefore affirm

the District Court's ruling that Lincoln was entitled to summary judgment on the premium refund claim.

* * * * *

For the foregoing reasons, we will AFFIRM.